125 N.J. Super. 492 (1973)
311 A.2d 760
STATE OF NEW JERSEY, PLAINTIFF,
v.
WILLIAM CAHILL, DEFENDANT.
Superior Court of New Jersey, Law Division  Criminal.
Decided October 23, 1973.
*493 Mr. Richard Pizzi, Assistant Prosecutor, for plaintiff.
*494 Messrs. McGlynn, Ruprecht & Graham, attorneys for defendant (Mr. Louis A. Ruprecht of counsel and on the brief).
TRIARSI, J.S.C.
This is a Motion for a new trial pursuant to R. 3:20-1 on the grounds that the verdict was against the weight of the evidence and that there was a manifest denial of justice under the law. Defendant was charged in a four-count Indictment with:
1. Assault with an offensive weapon  2A:90-3
2. Illegal possession of a weapon  2A:151-41
3. Extortion  2A:105-4
4. Extortion while armed  2A:151-5
The case was tried in the Superior Court, Union County and resulted in a jury verdict of guilty as to simple assault and extortion. Count 2, illegal possession of a weapon, was dismissed on motion of the prosecutor and was not considered by the jury. The defendant was found not guilty on the other counts.
The principal thrust of defendant's argument is that the State knowingly failed to correct false statements made by one of its witnesses by neglecting to bring to the attention of the jury a prior inconsistent and exculpatory statement by said witness, and further, by failing to correct certain statements made by the said witness on cross-examination that were known to the prosecutor to be false.
This is not the typical use of perjured testimony type case where a prosecutor actively or negligently fails to disclose information or prior dealings to defense counsel in an attempt to obtain a conviction. In fact, the record discloses that the prosecutor had made every disclosure required of the State in a criminal case as soon as the information became known to him. This discovery was provided despite the fact that no discovery motion was made pursuant to R. 3:13-3(a), (b) and (c) by defense counsel and no order of discovery was in effect at any time during these proceedings.
A brief review of the pertinent facts discloses that defendant and one Battifarano were originally co-defendants; *495 however, on the second day of trial Battifarano pled guilty to an assault with an offensive weapon charge. The prosecutor and defense counsel stipulated that sometime immediately prior to this plea, Battifarano, his attorney Mr. Deer, and the prosecutor engaged in plea bargaining at which time Mr. Battifarano gave the prosecutor a statement that "Mr. Cahill did not have a gun while perpetrating the alleged offense." Subsequently, Deer met with defendant and defense counsel and informed them of Battifarano's statement concerning the absence of a gun during the perpetration of the alleged incident. It was during this recess that the prosecutor decided to withdraw the plea bargain offer, stating that he did not believe Mr. Battifarano's story, and he so informed not only Deer, Battifarano's attorney, but also defense counsel herein. The plea offer was subsequently reinstated without its being contingent upon Battifarano testifying in the case as previously stipulated, and Battifarano entered a plea of guilty to the assault with an offensive weapon charge.
On July 2, 1973 Battifarano testified on behalf of the State and on direct examination stated that defendant had used a gun in perpetrating the alleged offense. The prosecutor permitted this statement to rest unchallenged before the jury and did not attempt to correct, dilute or effect the same. He did not attempt or bring to the attention of the witness before the jury the prior inconsistent exculpatory statement. Additionally, certain testimony in the same vein elicited during cross-examination of the witness that is hereafter set forth, was permitted to rest unmolested, thus giving rise to the crucial question on this motion.
The pertinent facts of the Battifarano cross-examination above referred to are:
Q. After you decided to enter your plea of guilty to assault with an offensive weapon, did you have a discussion with your attorney as to whether or not you were going to be testifying in this case?
A. Yes.
Q. In that discussion with your attorney, was the subject of whether or not there was a gun on the premises mentioned?
*496 A. No.
Q. Never?
A. No.
Q. Before your testimony today, have you ever told anybody that there was no gun on the premises that evening?
A. I didn't tell anybody there was no gun on the premises.
Q. Before your testimony today, have you ever told anybody that it was your intention to testify that there was no gun on the premises?
A. No.
Q. You've never said that?
A. No.
The issue herein is whether the prosecutor is under an affirmative duty to disclose to the court and jury any prior inconsistent and exculpatory statement of his own witness, and further, whether the prosecutor is under an affirmative duty to correct false statements made by his own witness before a jury where both counsel are aware of the falsity.
It is uncontrovertedly the law in New Jersey and all the states that the suppression of exculpatory evidence or use of perjured testimony by the State, whether willful or merely negligent, deprives the defendant of a fair trial. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959).
This principle  that the State may not knowingly use false evidence, including false testimony, to obtain a tainted conviction  implicit in any concept of ordered liberty, does not cease to apply merely because the false testimony goes only to the credibility of the witness. Napue v. Illinois, 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); State v. Taylor, 49 N.J. 440, 453 (1967).
In order to be entitled to relief on the ground that false or perjured testimony was used in obtaining a conviction, a defendant must establish that (1) the testimony was false or perjured; (2) it was material to the conviction, and (3) the prosecutor either participated in or had knowledge of the falsity. Jackson v. United States, 338 F. Supp. 7 (D.C.N.J. 1971).
*497 There can be no denial of the fact that the witness, prior to his damaging testimony, gave the prosecutor an exculpatory statement; further, there can be no denial that during his cross-examination the witness testified falsely to a highly material fact; and still further, there can be no denial that the prosecutor did not attempt to correct these matters before the jury This action or inaction was highly prejudicial to the defendant for it not only pertained directly to the credibility of the witness but also to the highly material issue of whether defendant used a gun in the perpetration of the offense charged.
It therefore remains for this court to decide the third element, namely, whether the prosecutor participated in the falsity through design or neglect. The conclusion is inevitable. No charge has been fostered that the prosecutor acted designedly, nor has any such thought been considered by the court. He erred.
The prosecution would have this court distinguish the Brady line of cases and the present case because those cases deal with active or negligent concealment by a prosecutor of deals or statements previously made of which defendant was unaware at the time of trial. It is argued that since defense counsel knew of the prior inconsistent statement, the prosecutor was under no duty to disclose that fact to the court and jury because full disclosure of these statements had already been made by the prosecutor to defense counsel, and it was therefore up to defense counsel to pursue the point on cross-examination or else waive his right.
It has been held that a defendant may waive his right to relief on the ground that perjured testimony was used, where he knows of the perjured or false nature of the testimony but makes no attempt to demonstrate its falsity by cross-examination or by his own testimony or by use of rebuttal witnesses who are readily available at trial. McGuinn v. United States, 99 U.S. App. D.C. 286, 239 F.2d 449 (D.C. Cir.1956); Green v. United States, 256 F.2d 483 (1 Cir.1958). See also, *498 People v. Lueck, 24 Ill.2d 554, 182 N.E.2d 733 (Sup. Ct. 1962). However, this court finds a distinction in the present case from the above cases in that the defense counsel in this case did vigorously cross-examine the witness and repeatedly received a negative response to the question of whether he had ever made a prior statement concerning the absence of a gun.
In Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935), the Supreme Court held that knowing use by the State of perjured testimony to obtain a conviction, and the deliberate suppression of evidence to impeach that testimony, constituted a denial of due process of law. Recently in People v. Faulkner, 7 Ill. App.3d 221, 287 N.E.2d 243 (App. Ct. 1972), the Illinois court held that it is also the prosecutor's duty as a representative of the people to see that defendant receives a fair trial, and when he learns his witness has made an untrue statement, even if only as to a collateral issue, he is duty-bound to inform the court and jury of its incorrectness.
Further, the United States Supreme Court recently held that the good or bad faith of the prosecutor is irrelevant where false testimony is concerned. A new trial is required in a criminal case if false testimony by a state witness is allowed to go uncorrected when it appears that it could in any reasonable likelihood have affected the judgment of the jury. Whether the nondisclosure was a result of negligence or design, it is the prosecutor's responsibility to disclose the incorrectness of the witness's statement. Giglio v. U.S., 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).
This State has cited with approval, in State v. Taylor, supra, the principle set forth in People v. Sauvides, 1 N.Y. 2d 554, 154 N.Y.S.2d 885, 136 N.E.2d 853 (Ct. App. 1956), that:
It is of no consequence that the falsehood bore upon the witness's credibility rather than directly upon defendant's guilt. A lie is a lie, no matter what its subject, and, if it is in any way relevant to *499 the case, the district attorney has the responsibility and duty to correct what he knows to be false and elicit the truth. [at 557, 154 N.Y.S.2d at 887, 136 N.E.2d at 854 (Emphasis added)]
It is the opinion of this court that this principle is so deeply rooted in the fair trial concept that the fact that defendant and his counsel were aware of its falsity does not relieve the prosecutor of an affirmative duty to come forward with the truth, especially in this case since the only possible rebuttal witnesses available were Battifarano's defense counsel and the prosecutor himself. It seems manifestly unjust on these facts to require defense counsel to seek rebuttal witnesses when the prosecutor has the truth at his fingertips.
In light of the totality of the circumstances as herein set forth, this court finds that there was a manifest denial of justice and therefore, in the interest of justice, this court vacates the judgment and grants the defendant's motion for a new trial.
This court previously disposed all other issues raised by the defense and finds no reason to reiterate its rulings.